**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **CENTRO RADIOLOGICO ROLON, INC., ET AL.**<br><br>       Plaintiffs,<br><br>       v.<br><br>**UNITED STATES OF AMERICA, ET AL.,**<br><br>       Defendants. | CIVIL NO. 14-1611 (PG) |

**OPINION AND ORDER**

Plaintiffs Centro Radiologico Rolon, Inc. ("CRR"), and its owners Cesar del Valle and Maite Rolon (collectively, the "plaintiffs") filed the instant action against defendants the United States of America; the United States Department of Health and Human Services ("HHS"); the United States Attorney for the District of Puerto Rico, Rosa Emilia Rodriguez-Velez; the Secretary of HHS; the Attorney General of the United States; and First Coast Services Options, Inc. ("First Coast"), a Center for Medicare and Medicaid Services ("CMS") contract carrier (collectively, the "defendants"), seeking judicial review of a final decision issued by the Secretary of the HHS affirming the revocation of CRR's Medicare enrollment and billing privileges. See Docket No. 1. Plaintiffs also request a writ of mandamus, declaratory judgment, and temporary restraining order or preliminary injunction. Id. at ¶¶ 38-40.

Before the court is the defendants' motion for judgment on the pleadings, or in the alternative, to dismiss (Docket No. 15),[1] and the plaintiffs' opposition thereto (Docket No. 34). After a close examination of the evidence on record and a careful review of the applicable statutory and case law, the court **GRANTS** the defendants' motion for the reasons explained below.

**I.   STANDARD OF REVIEW**

**A. Motion for Judgment on the Pleadings**

Rule 12(c) of the Federal Rules of Civil Procedure allows a party, "[a]fter the pleadings are closed but within such time as not to delay the trial, [to] move for judgment on the pleadings." Courts treat a Rule 12(c) motion for judgment on the pleadings "much like a Rule 12(b)(6) motion to

---

[1] The defendants also filed a memorandum of law in support thereof. Docket No. 16.

dismiss." Pérez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008) (citing Curran v. Cousins, 509 F.3d 36, 43–44 (1st Cir. 2007)). Because a Rule 12(c) motion "calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom" in the nonmovant's behalf. See R.G. Financial Corp. v. Vergara-Nunez, 446 F.3d 178, 182 (1st Cir. 2006). Nonetheless, to survive a motion under Rule 12(c), a complaint must set forth factual allegations that "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." Perez-Acevedo, 520 F.3d at 29 (citing Bell Atlantic v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), as the standard applicable to a Rule 12(b)(6) motion and "by extension, a Rule 12(c) motion").

When assessing the merits of a Rule 12(c) motion, the court "may consider documents the authenticity of which are not disputed by the parties; documents central to plaintiffs' claim; and documents sufficiently referred to in the complaint." Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007)(internal quotation marks omitted). "This is true even when the documents are incorporated into the movant's pleadings." Id. (citing Beddall v. State Street Bank and Trust Co., 137 F.3d 12, 17 (1st Cir. 1998)("When, as now, a complaint's factual allegations are expressly linked to-and admittedly dependent upon—a document [offered by the movant] (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it ….")).

**B. Scope of Review of Administrative Decision**

A Medicare provider or supplier whose Medicare enrollment or billing privileges are revoked may have a hearing and seek judicial review of the Secretary's final decision under Section 1866(j) of the Social Security Act.[2] 42 U.S.C. § 1395cc(h)(1)(A), (j)(8) (incorporating 42 U.S.C. § 405(g) to the Medicare statute); see also 42 C.F.R. § 498.1. The scope of judicial review is narrow, as "[t]he findings of the Secretary as to any fact, if supported

---

[2] When applying Section 405(g) to Medicare actions, reference made therein to the Commissioner of Social Security or the Social Security Administration are considered references to the Secretary or the HHS, respectively. See 42 U.S.C. § 1395cc(h)(1)(A).

by substantial evidence, shall be conclusive…." 42 U.S.C. §405(g).[3] Section 405(g) gives the district court the "power to enter, upon the pleadings and the transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Secretary], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

The First Circuit has explained that even if the administrative record supports more than one conclusion, the Secretary's decision must be upheld "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Shaw v. Sec'y of Health & Human Servs., 25 F.3d 1037 (1st Cir. 1994) (quoting Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991)); see also Class-Soto v. Comm'r of Soc. Sec., Civil No. 08-1802 (SEC), 2010 WL 1416033, at *1 (D.P.R. Mar. 31, 2010) (citing Ortiz, 955 F.2d at 769) (noting that under First Circuit case law the determination of substantiality must be made on the record as a whole). It has also stated that a further gloss lies atop the basic principles of a judicial review when Congress has entrusted an agency with rulemaking authority. See Maine Med. Ctr., 841 F.3d at 17. In such cases:

> [p]articular deference is owed to the agency's interpretation of its own regulations…. That deference is most pronounced when the issue involves "a complex and highly technical regulatory program," such as Medicare, "in which the identification and classification of relevant criteria necessarily require significant expertise and entail the exercise of judgment grounded in policy concerns."

Maine Med. Ctr. v. Burwell, 841 F.3d 10, 17 (1st Cir. 2016) (citation omitted). After carefully evaluating the administrative record, the court concludes that substantial evidence supports the final decision challenged by plaintiffs.

## II. BACKGROUND

### *The Medicare Program – An Overview*

The Medicare program provides health insurance benefits to individuals over the age of sixty-five and to individuals with certain disabilities. 42 U.S.C. § 1395cc. Congress has granted the Secretary of the HHS broad authority to issue rules and regulations pertaining to the administration of Medicare.

---

[3] The Supreme Court has defined substantial evidence as "more than a mere scintilla[, or] such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971).

See e.g. 42 U.S.C. §§ 1302(a) and 1395hh(a)(1). Relevant to this case is that which sets forth the enrollment process for providers and suppliers wishing to participate in Medicare. Successful completion of the enrollment process allows providers and suppliers to receive billing privileges and a billing number.[4] See 42 C.F.R. §§ 424.500. The regulation also requires participants to resubmit and revalidate their Medicare enrollment information every five years in order to maintain billing privileges. See 42 C.F.R. § 424.515.[5]

CMS, a component of the HHS, administers Medicare. CMS outsources regulatory review to private entities known as Medicare administrative contractors (or "MACs"). MACs are also tasked with conducting first-level appeals of administrative decisions denying Medicare enrollment or revoking billing privileges. See 42 U.S.C. § 1395kk-1(a)(4). In our case, CMS contracted First Coast to administer compliance and credentialing standards in Puerto Rico, where CRR is based. Docket No. 1 at ¶¶ 6 and 10.

### *2011 Revalidation of Medicare Enrollment*

CRR is an Independent Diagnostic Testing Facility ("IDTF") enrolled in the Medicare program since 2002.[6] Id. at ¶ 11. According to CRR's enrollment forms, the facility performs X-rays, as well as specialized diagnostic tests such as MRI scans, CT scans, DEXA (or bone density) scans, sonograms, and mammographies. Docket No. 20-1 at pp. 59-74. Plaintiffs readily concede that to maintain its billing number and privileges, CRR was required to resubmit and revalidate its enrollment information periodically in accordance with the governing regulations. Docket No. 1 at ¶ 12. See 42 C.F.R. § 424.515.

On July 12, 2011, First Coast sent CRR a revalidation request stating the time limit (60 days) for submitting the applicable enrollment application and all supporting documentation to CMS in accordance with 42 C.F.R. § 424.515. Docket No. 20-1 at pp. 20-21. CRR failed to do so, and on September 19, 2011, First Coast notified its decision to revoke CRR's billing privileges with an effective date of October 19, 2011. Docket No. 1 at ¶ 13; Docket No. 20-1 at pp. 102-103. As a result, CRR would not be eligible to reapply for enrollment in Medicare for a period of one year. The letter also listed the alternatives

---

[4] While the term Medicate "supplier" is reserved for physicians, other practitioners and facilities, the term "provider" refers to entities such as hospitals, skilled nursing facilities, and home health agencies. See 42 C.F.R. § 400.202. The distinction will become relevant later in this opinion.

[5] Revalidations conducted outside the five-year period are known as "off-cycle" revalidations.

[6] An IDTF is considered a "supplier" under Medicare regulations. Id.

for CRR to appeal the decision, including that of submitting a corrective action plan (or "CAP") within 30 days.[7] Id.

### *Corrective Action Plan*

On October 3, 2011, First Coast received CRR's CAP. Docket No. 20-1 at pp. 109-113. The additional documentation submitted by CRR in support thereof was received by First Coast on October 13 and 14, 2011. Id. at pp. 114-136. By letter dated November 1, 2011, First Coast notified CRR its decision to deny the CAP based on CRR's failure to furnish all required information and documentation to process the request. That information included, without limitation: CRR's identifying information (type of supplier and correspondence address), identification information as to CRR's owners, directors/officers, authorized officials, and delegated officials, and information pertaining to the IDTF's interpreting and supervising physicians (e.g., names, license/certification numbers, and issue dates).[8] Docket No. 21-1 at pp. 91-94.

On November 5, 2011, plaintiffs requested reconsideration of the revocation decision with a senior staff member from First Coast's Provider Enrollment Appeals Department. Id. at pp. 95-96. On December 15, 2011, the appeals staff member issued an on-the-record decision affirming the revocation. Docket No. 22-1 at pp. 69-73. On January, 23, 2012, plaintiffs appealed First Coast's reconsidered decision with an HHS administrative law judge ("ALJ").[9] Id. at page 74. Soon thereafter, CMS and CRR reached an agreement pursuant to which CMS would direct First Coast to vacate CRR's revocation from Medicare and re-process its revalidation application. Accordingly, the ALJ remanded the case to CMS and dismissed plaintiffs' appeal. Docket No. 1 at ¶¶ 18-19; Docket No. 17-2 at pp. 41-46.

### *2012 Revalidation of Medicare Enrollment*

In May of 2012, after the case was remanded, First Coast notified CRR that additional information and documentation was needed to process CRR's revalidation application, including copy of the American Board Certifications for CRR's physicians. Docket No. 22-1 at pp. 113-115. On June 6, 2012, CRR

---

[7] The CAP is a formal method to reopen a previously submitted application.

[8] The letter included a separate list of all missing and/or incomplete information identified by First Coast when reviewing CRR's CAP request, such as copy of CRR's contracts with the facility's interpreting physicians, employment agreements or proof of employment as to CRR's technicians, and copy of insurance certificates or copy of the American Board Certifications for CRR's physicians.

[9] The case was docketed as C-12-382 and assigned to ALJ Joseph Grow ("ALJ Grow").

owner and administrator Maite Rolon ("Rolon") spoke with a First Coast employee regarding the board certifications CRR had to submit, and the deadline (June 12, 2012) for doing so. Docket No. 23-1 at page 68.

### *Revocation from Medicare*

On July 27, 2012, First Coast notified CRR that it was revoking its Medicare billing privileges effective August 16, 2012, after finding CRR had failed to evince its compliance with the applicable credentialing standards, including but not limited to, credentialing requirements for supervising and interpreting physicians and technicians performing services in an IDTF.[10] Docket No. 23-1 at pp. 79-84; see 42 C.F.R. § 410.33. CRR was also informed it would be ineligible to re-apply for enrollment in the Medicare program for a period of one year. Id. at page 80. Plaintiffs filed a reconsideration request dated August 23, 2012, that was received by First Coast on August 28, 2012. Docket 23-1 at pp. 85-101. Nonetheless, on January 15, 2013, an appeals staff member from First Coast's Provider Enrollment Appeals Department issued an on-the-record decision affirming CRR's revocation from Medicare. Docket No. 18-1 at pp. 19-27.[11]

### *HHS – ALJ Administrative Review*

On March 8, 2013, CRR appealed First Coast's reconsidered decision with an ALJ of the HHS Departmental Appeals Board ("DAB"), Civil Remedies Division ("CRD"), where the case was assigned to ALJ Grow. Id. at pp. 1-18. Soon thereafter, ALJ Grow issued a pre-hearing order setting for the general procedure for record development in the case. Id. at pp. 63-69. The order instructed each of the parties to file a pre-hearing exchange together with copy of all proposed exhibits, including the written direct testimony of any

---

[10] The July 27, 2012 notice outlined the regulatory provisions for IDTFs codified at 42.C.F.R. § 410.33, and the supervision and credentialing requirements specified in Local Coverage Determination L29330 ("LCD L29330") for services performed on or after March 2, 2009, followed by an explanation of the several violations and deficiencies found in CRR's revalidation submissions, including its failure to furnish: **(1)** board certifications by the American Board of Medical Specialties ("ABMS") for its physicians; **(2)** credentialing documentation evincing the training and proficiency of its technicians; **(3)** a business telephone number available through directory assistance; and **(4)** information regarding protocol, investigation, actions and decisions related to health insurance beneficiaries' claims. **Docket No. 23-1 at pp. 79-82.** First Coast further found that CRR had failed to timely report changes in supervising personnel after Dr. Armando Bonnet began working at CRR on or after June 1, 2010. **Id. at page 81.**

[11] The court cites to the reconsidered decision attached to CRR's subsequent appeal as Exhibit I ("Reconsideration Case No. 921224184425," dated January 15, 2013), filed on March 8, 2013.

proposed witnesses in the form of an affidavit or declaration under penalty of perjury. Id. at pp. 65-67.

On April 24, 2013, CMS filed a pre-hearing exchange and a motion summary judgment, along with 38 exhibits. Id. at pp. 74-99. In its motion for summary judgment, CMS argued that the undisputed material facts showed that CRR did not meet the standards and requirements for revalidation of its enrollment as an IDTF and, therefore, First Coast had properly revoked its Medicare billing privileges. Id. at pp. 81-99. CRR also filed a pre-hearing exchange memorandum with six exhibits. In addition, CRR proposed several witnesses. Id. at pp. 108-121. On June 21, 2013, CRR opposed CMS' motion for summary judgment arguing that there were "material controversies as to the facts presented by defendants…." Id. at page 132. Notably, in its pre-hearing exchange memorandum CRR had already indicated that there were no contested material facts. Id. at page 119.

### *ALJ Decision No. CR3136*

Because CRR failed to comply with ALJ Grow's pre-hearing order (directing the parties to submit written direct testimony for proposed witnesses), ALJ Grow determined that an in-person hearing was not necessary in the case. Thus, on February 28, 2014, the ALJ issued his decision on the full merits of the written record. Docket No. 19-1 at pp. 19-25. ALJ Grow determined that CMS (through First Coast) properly revoked CRR's billing privileges given CRR's failure to: **(1)** evince that its supervising and interpreting physicians met the applicable qualification requirements; **(2)** evince that its non-physician technicians met credentialing standards for performing certain procedures CRR had listed on its revalidation application; and **(3)** meet Medicare requirements regarding changes in general supervision by submitting the appropriate form within 30 calendar days of the change.

### *HHS - DAB Appeal*

Predictably, CRR appealed the ALJ's decision with the HHS DAB, Appellate Division with no success. On June 27, 2014, the Appellate Division affirmed ALJ Grow, finding that CRR had failed to show that the challenged determination was not supported by substantial evidence or was based on legal error. Docket No. 17-2 at pp. 10-16. The Appellate Division further found that each regulatory violation listed in ALJ Grow's decision was, in and of itself, sufficient to support the revocation decision. Id. As defendants correctly

state, the DAB Appellate Division's decision is the HHS Secretary's final decision, and thus appealable before this court.

Still dissatisfied, plaintiffs filed the instant suit alleging that defendants' actions have deprived them "of the due process…and of their property." Docket No. 1 at ¶ 33. Plaintiffs claim that the defendants' actions are ultra vires, shocking to the conscience, as well as a contractual breach.[12] Id. They ask the court to order the HHS to implement and enforce the Social Security Act and the provisions applicable to this matter. Id. at ¶ 35.

### III.   DISCUSSION

**A. Substantial Evidence**

In their motion for judgment on the pleadings the defendants assert that substantial evidence supports the Secretary's determination regarding CRR's noncompliance with various requirements established in the Medicare regulations and in First Coast's LCD. See Docket No. 16-1 at page 13. Plaintiffs, on the other hand, argue that CRR "complied with all the requirements established by the [HHS]." Docket No. 34 at pp. 5-6. To demonstrate this, plaintiffs submitted Rolon's statement under penalty of perjury which, for the most part, restates the allegations in their complaint. See Docket No. 34-1 pp. 1-5. After reviewing the same, the court finds that

---

[12] This is not plaintiffs' first time at the rodeo. In December of 2012, they filed suit before this district court seeking essentially the same remedies they now request, including a writ of mandamus under 28 U.S.C. § 1651 et seq., and declaratory judgment under 28 U.S.C. § 2201 et seq. See Centro Radilogico Rolon v. United States, Civil No. 12-2051 (JAF). Given that the DAB Appellate Division had not yet issued a final decision on plaintiffs' administrative action, the district court eventually dismissed the complaint for lack of subject matter jurisdiction. See Centro Radilogico Rolon v. United States, Civil No. 12-2051 (JAF), 2014 WL 556452, at *3 (D.P.R. Feb. 13, 2014) (citing 42 C.F.R. § 498.5(l)(3); 42 U.S.C. § 1395ff(b)). The court also determined that no independent basis for jurisdiction existed over plaintiffs' request for a writ of mandamus and declaratory judgment because Section 405(g) "to the exclusion of 28 U.S.C. § 1331, is the sole avenue for judicial review for all 'claims arising under' the Medicare Act." Centro Radilogico Rolon, Civil No. 12-2051 (JAF), 2014 WL 556452, at *3 (quoting Heckler v. Ringer, 466 U.S. 602, 614-15 (1984)).

In the motion under 12(c) the defendants ask this court to "reject plaintiffs' asserted bases for jurisdiction, other than 42 U.S.C. § 405(g)." Docket No. 16-1 at page 21. In their opposition, plaintiffs simply assert that their request for a writ of mandamus and declaratory judgment should not be denied because defendants "ha[ve] shown a lack of responsibility and failure to comply with the terms established by law." Docket No. 34 at page 6. Their failure to seriously develop this point, however, amounts to waiver. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (alteration in original) (citation omitted) (holding that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived," given that litigants are required to "spell out [their] arguments squarely and distinctly").

At any rate, the court is persuaded by the defendants' arguments on the matter, which find ample legal support. Consequently, plaintiffs' request for a writ of mandamus and declaratory judgment, as well as any other request or claim excluded by Section 405(g) or for which no independent basis for jurisdiction exists (e.g., alleged breach of contract) are hereby **dismissed with prejudice.**

neither the statements nor the documents attached therein show CRR complied with the regulatory requirements discussed below.

### 1. Qualification Requirements: Physicians and Technicians

*a) Physicians*

In order to receive reimbursement for the performance of diagnostic procedures under Medicare, these must be performed by a physician (or a group of physicians), a nurse practitioner or a clinical nurse who performs a state-authorized test, an approved supplier of portable x-ray services or an IDTF. 42 C.F.R § 410.33(a)(1); see also 42 C.F.R § 410.32 (listing the diagnostic procedures that an IDTF may perform). For IDTFs, the diagnostic tests covered under Medicare, and payable under the physician fee schedule, must be furnished under appropriate level of supervision. The IDTF must therefore have at least one supervising physician providing general supervision at no more than three of its sites. See 42 C.F.R. § 410.33(b)(1). Said physician is responsible for overseeing the quality of the tests performed, the operation of the equipment used to perform the tests and the qualification of non-physician IDTF personnel. Id.

In addition, the IDTF must certify the physician's compliance with applicable credentialing standards by documenting his or her proficiency in the performance and interpretation of each type of diagnostic procedure performed by the IDTF. See 42 C.F.R. § 410.33(b)(2). This may be accomplished by submitting the supervising physician's certification in specific medical specialties or subspecialties or by complying with the requirements established by the MAC for the service area in which the IDTF is located. See id.; see also 42 C.F.R. § 421.400. Here, First Coast's LCD L29330 and the credentialing matrix (or "coding guidelines") attached thereto require that an IDTF's supervising physician be an ABMS certified radiologist for the services listed in CRR's revalidation application.[13] See Docket No. 22-1 at pp. 123-137 and Docket No. 23-1 at pp. 1-5 (services listed by CRR on

---

[13] The revalidation application is dated June 6, 2012. See Docket Nos. 22-1 and 23-1.

LCDs are determinations made by MACs (previously known as fiscal intermediaries or a carriers) pursuant to the Medicare statute regarding coverage of specific items or services. See 42 U.S.C. 1395ff(f)(2)(B). The Medicare regulations do establish a procedure for aggrieved parties to appeal or challenge the reasonableness of an LCD. See 42 C.F.R. § 426.400. In the instant case, plaintiffs did not avail themselves of this procedure. Nor do they attempt to challenge the reasonableness of First Coast's LCDs before this court.

revalidation application submitted in June 2012); Docket No. 24-1 at pp. 23-69 (LCD L29330 and Coding Guidelines).

   A careful examination of the administrative record shows that plaintiffs never disputed the fact that CRR's supervising physicians, at least those listed on CRR's enrollment application, were not ABMS-certified. ALJ Grow and the DAB Appellate Division so found. See Section II, *supra.* More importantly, neither the record nor the documents submitted by the plaintiffs as part of the instant case contain the ABMS certifications required by Medicare or First Coast. At the administrative stage, the plaintiffs merely asserted that its supervising physicians obtained certifications issued by the Department of Health of Puerto Rico, and therefore, CRR was "in compliance with state and federal law." See e.g. Docket No. 18-1 at pp. 135-137 and 140-147. They also asserted that two of the supervising physicians held "specialty certificates" in diagnostic radiology. It was not until August 23, 2013, that CRR submitted the certificates and licenses of its physicians. A review of this evidence confirms that they were not issued or otherwise sanctioned by the ABMS. See id. at pp. 140-148.

   In light of the foregoing, the DAB Appellate Division determined that the plaintiffs had failed to show that the supervising physicians met the requirements of 42 C.F.R. § 410.33(b)(2). It further found that insofar as plaintiffs' failed to (1) show or explain how the "specialty certificates" sufficed, or (2) argue that the ALJ had committed error by relying on LCD L29330 to determine the applicable credentialing standards for supervising physicians, it was under no obligation to determine whether the non-ABMS certifications complied with 42 C.F.R. § 410.33(b)(2). See Docket No. 17-2 at page 14.

   *b) Technicians*

   The Medicare regulations also require that IDTFs like CRR "[h]ave technical staff on duty with the appropriate credentials to perform tests…." 42 C.F.R. § 410.33(g)(12). Technicians "must demonstrate the basic qualifications to perform the tests in question and have training and proficiency as evidenced by licensure or certification by the appropriate State health or education department. In the absence of a State licensing board, the technician must be certified by the appropriate national credentialing body." 42 C.F.R. § 410.33(c) (emphasis added). First Coast's LCD L29330 further specifies that technicians who conduct the tests listed by

CRR on its revalidation submissions must be certified by a national credentialing entity, such as the American Registry of Radiologic Technologists, American Registry of Diagnostic Medical Sonographers, or American Registry of Resonance Imaging Technologists. See Docket No. 24-1 at pp. 28, 36-67; see also Docket No. 20-1 at pp. 63-74.

At the administrative juncture, the plaintiffs argued that CRR's technicians (or non-physician personnel) were "state licensed and their credentials were timely provided…." Docket No. 18-1 at page 134. To that end, they only submitted documentation showing CRR's technicians were licensed as radiologic technologists by the Puerto Rico Department of Health. See Docket No. 21-1 at pp. 43-45. Nonetheless, as the DAB Appellate Division already determined, in the absence of a license or certificate issued by a State licensing board CRR was required to have technicians certified by a national credentialing organization. Based on the documentation submitted by CRR, the Appellate Division found that it had failed to adequately demonstrate its compliance with the requirements applicable to technicians under the Medicare regulations cited above. See Docket No. 17-2 at pp. 10-16. There being substantial evidence in the record to support that decision, the plaintiffs' claim necessarily fails.

The defendants present several other legal grounds which support both the ALJ's and the DAB Appellate Division's determination on this issue. See Docket No. 16-1 at pp. 16-17 and 19-20.[14] Nonetheless, having thoroughly evaluated the record before us, and the plaintiffs having failed to either submit any evidence with which to dispute the DAB Appellate Division's conclusions or point to any legal error, at this time the court finds that the record contains substantial evidence which, read as a whole, adequately supports the Secretary's final decision.

In accordance with the foregoing, the court **GRANTS** the defendants' motion for judgment on the pleadings under Fed.R.Civ.P. 12(c) as to all of the

---

[14] Among these, the defendants argue that "[s]ubstantial evidence in the record supports the Secretary's conclusion that Plaintiff's did not comply with the requirement that they report a change in CRR's supervising physician within 30 days of the change." Id. at page 20. The court has evaluated the record and agrees with the defendants. It is worth noting that at no point during administrative proceedings did the plaintiffs dispute their noncompliance with the reporting requirement codified at 42 C.F.R. 410.33(g)(2). Since their opposition to the defendants' motion, and specifically, the scant statement through which they address this issue is desultory at best, the court deems any argument on the matter waived. See Zannino, 895 F.2d at 17.

plaintiffs' claims under 42 U.S.C. 405(g), and hereby **dismisses them with prejudice.**

### B. Injunctive Relief

The plaintiffs also request a TRO and/or a preliminary injunction enjoining defendants from excluding plaintiffs from (1) "servicing their patients…[,]" (2) "from invoicing as due and as a provider…," and (3) "to reinstate[] the status as a qualified provider" under Medicare. Docket No. 1 at ¶ 40. The defendants oppose plaintiffs' request arguing that there is no jurisdictional basis to grant such extraordinary relief, other than by reversing the Secretary's final decision in accordance with 42 U.S.C. § 405(g). See Docket No. 16-1 at page 23.

In evaluating a motion for a temporary restraining order and/or preliminary injunction, the court considers the same four factors. See Adams v. Wells Fargo Bank, N.A., Civ. No. 16-40153-TSH, 2016 WL 6275589, at *3 (D. Mass. Oct. 26, 2016); Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO, Local Lodge No. 1821 v. Verso Paper Corp., 80 F. Supp. 3d 247, 277–78 (D. Me. 2015). The burden is on the movant – here, the plaintiffs – to establish: **(1)** a likelihood of success on the merits, **(2)** a likelihood of irreparable harm absent interim relief, **(3)** that the balance of equities is in his favor, and **(4)** that a preliminary injunction is in the public interest." JL Powell Clothing LLC v. Powell, 590 F. App'x 3, 4 (1st Cir. 2014). "[W]hile each of the four factors is important, 'the cynosure of this four-part test is more often than not the movant's likelihood of success on the merits.'" Swarovski Aktiengesellschaft v. Bldg. No. 19, Inc., 704 F.3d 44, 48 (1st Cir. 2013) (citing Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 115 (1st Cir. 2006)). Thus, "if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." Boston Duck Tours, L.P. v. Super Duck Tours LLP, 531 F.3d 1, 11 (1st Cir. 2008) (quoting New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002)).

In their motion for judgment on the pleadings, the defendants argue that "in light of the fact that both the ALJ and the DAB Appellate Division affirmed CRR's revocation from the Medicare program, and given the circumscribed standard of review under 42 U.S.C. § 405(g)" the plaintiffs cannot meet the first factor. Docket No. 16-1 at page 24. With respect to the plaintiffs' alleged deprivation of property, which stems from CMS' alleged refusal to

process certain claims for services provided by CRR (Docket No. 1 at ¶ 27), the defendants aver that insofar as the plaintiffs did not raise this matter during the administrative stage of proceedings it is not reviewable by this court. Finally, the defendants point out that under First Circuit precedent, Medicare suppliers do not have a protected property interest in their continuing eligibility to bill for reimbursement under Part B. Cervoni v. Sec'y of Health, Ed. & Welfare, 581 F.2d 1010, 1018 (1st Cir. 1978).

Plaintiffs, in turn, aver that their preliminary injunction request should not be denied because the defendants "have shown a lack of responsibility" and have failed to comply with the terms and deadlines "established by the law." Docket No. 34 at page 6. According to the plaintiffs, this is the essence of any preliminary injunction. Id. Such puzzling, undeveloped and unverified argument does not establish the plaintiffs' likelihood of success on the merits. See Marek v. Rhode Island, 702 F.3d 650, 655 (1st Cir. 2012) (quoting Zannino, 895 F.2d at 17) ("Rather than guessing at what these arguments may or may not portend, we fall back upon the prudential rule that 'issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'"). For the reasons that follow, the court denies their request.

First, the court already concluded that substantial evidence supports the Secretary's final decision regarding the plaintiffs' revocation from Medicare. Second, after revising the record the court further concludes that the plaintiffs indeed failed to raise the alleged deprivation of property due to purported non-payment by CMS as part of their administrative complaint, thus precluding this court from considering such claim. Even under different circumstances, the court would be inclined to follow a previous decision in which it held that hospice agencies do not have a protected property interest in the continued eligibility to receive payments of the same or similar nature to those sought by the plaintiffs in this case (i.e., reimbursement for services under Medicare). See Arecibo Med. Hospice Care v. Shalala, Civil Nos. 94-1802 (PG) and 94-1803 (PG), 1994 WL 448678, at *2 (D.P.R. Aug. 18, 1994) (citing Cervoni, 581 F.2d at 1018) (so concluding). In sum, to the extent the plaintiffs cannot demonstrate that they are likely to succeed on their quest, the remaining factors effectively become a matter of idle curiosity, which the court has no obligation to evaluate. See Boston Duck Tours, L.P., 531 F.3d at 11.

## IV. CONCLUSION

For the reasons stated above, the court hereby **GRANTS** the defendants' motion for judgment on the pleadings (Docket No. 15). Accordingly, plaintiffs' claims are hereby **DISMISSED WITH PREJUDICE.** Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, March 31, 2017.

S/ JUAN M. PÉREZ-GIMÉNEZ
**JUAN M. PEREZ-GIMENEZ**
**SENIOR U.S. DISTRICT JUDGE**
